Ms. Bahati, thank you to you and your firm for having this case pro bono. Your firm, Orrick, Harrington, and SecClub, thank you very much, and you may proceed. Thank you, your honors, and thank you for rescheduling based on my circumstances, I appreciate that. Good morning, may it please the court, my name is Ibnid Bahati, I represent Petitioner Mr. Jorge Montes Alfaro, your honors, I request three minutes for rebuttal. This court should reverse the IJ and BIA's decision as they erred in three ways, all relating to their failure to consider Mr. Montes' mental illness, which is required under all three standards governing the relief sought here. And that's in three ways, one in their determination of the particularly serious crime analysis, the second is their discretionary alternative denial of asylum, and third is their denial of relief under the Convention Against Torture. Your honors, as to my first point, the IJ and BIA failed to apply the proper legal standard here in determining whether Mr. Montes' crime of carjacking in 2003 was particularly serious. Under this court's decision in Gomez-Sanchez, the IJ and BIA were required to consider all the circumstances case-by-case, which includes mental illness, intent, and motivation. Instead, here, the IJ deemed the mental illness of Mr. Montes to be irrelevant. On page 40 of the record, you'll see after noting that Mr. Montes committed the crime in 2002 as a result of his severe hallucinations and mental illness, the IJ said, nevertheless, the danger he posed to the community at that time remains the same as if he were not suffering from hallucinations. That is not allowed under Gomez-Sanchez. The IJ's decisions, if we look at it, go through the elements of the crime and then a brief discussion about how the crime is a crime against persons on page 37 of the record. Well, counsel, let me have you slow down and go back to page 40 again, because that seems to be sort of the linchpin of your argument that the IJ improperly weighed the mental condition. As I read in context, the IJ acknowledged that he was suffering from hallucinations, right? So if you go back to the sentence at the top of page 40, that to me reads like an acknowledgement that he really committed the offense while suffering from hallucinations, but really that there was a dangerousness factor, which is the key to considering particularly serious crimes. So I take it as the IJ's attempt to acknowledge the hallucinations, but at the same time, talk about the dangerousness factor. Why is that not an appropriate evaluation? Your honors, at the most, you're correct. At most, what the IJ did was recite the facts and acknowledge that Mr. Montes suffers from a mental illness. However, in two places, actually, on page 39 and 40, however, the IJ says the danger he posed to the community is no different than if he had not been suffering from hallucinations and a mental illness. And that's the exact same kind of fact we have in Gomez-Sanchez, where the IJ and BIA in that case noted the petitioner has significant mental health struggles. In fact, the crime was committed and instigated because of his mental illness. The petitioner may not have had the intent. That's all in Gomez-Sanchez. And we have those same kinds of statements here in the IJ's decision on pages 37, 39, 40. But Gomez-Sanchez doesn't say how you have to treat it, right? You don't have to always treat it as mitigating evidence. You don't have to always treat mental health evidence as lessening the seriousness of a crime. It just says that an IJ is permitted to use his, her, their discretion in weighing relevant, reliable evidence of mental health. Actually, Your Honor, Gomez-Sanchez points to, indicates that mental illness may be a mitigating factor because it cited to matter of LS, which is BIA's precedent, and noted that the consideration of mental illness goes to intent and motivation. And in fact, whether the IJ is required to consider whether the petitioner was inherently base, vile, or depraved. So that, the language in Gomez-Sanchez suggests that when we're looking at mental illness, we need to consider whether the petitioner actually had the intent to commit the crime. But where does it say it always has to be viewed as lessening or mitigating? I don't see that. So if you give me the pin site, I have the case and I'm happy to consider where it says that. It just, in my mind, says the IJ has the discretion to consider relevant, reliable evidence of mental health. But it doesn't say how that has to be considered. Your Honors, the case does not say that it has to be always a favorable factor. But if you look at page, if you look at the citation to, on page, just give me the site here, on page 989, page 995, and yeah, I believe those are the two pages, 996. The court said that when you're looking at mental illness, you need to look at the intent and motivation. Now, if the intent and motivation is negative. Suppose Mr. Montes wanted to commit this crime, wanted to harm people, all of that, then yes, it's not a mitigating factor. Of course, it's not. But in this case, it's all very fact specific, right? It's a case by case inquiry. And in this case, it seems to me that the IJ was aware that he was suffering under hallucinations and that may negate intent on his part. But I think what the IJ was trying to say is that even so, it does not change the dangerousness evaluation. He was still dangerous, even if he lacked the intent to harm someone because he's laboring under delusions at that time. Is that not a fair reading of the record? No, Your Honor, because there's no analysis that the IJ provided showing how the severity of the crime was affected by his mental illness. At most, the IJ said, okay, yes, he suffered severe hallucinations. And then he goes on to say, well, the danger he posed is the same whether he has mental illness or whether he doesn't. How can he make that analysis without, how can you make that conclusion without any kind of analysis? It necessarily just deemed Mr. Montes' mental illness irrelevant. Furthermore... But this law requires the level of specificity of analysis that you are requiring of this IJ. I mean, I look at Bear v. Barr, I mean, I look at In re Frantescu, matter of BZR, and this slew of Ninth Circuit cases applying Gomez-Sanchez, and I just don't see that as a requirement. Your Honor, the language that I noted in Gomez-Sanchez, as well as PARA, require the IJ and BIA to consider how a petitioner's mental illness impacted the severity of his crime. And it's not just about specifying and making a whole list of what the IJ is thinking. The point is not deeming it irrelevant, and that's what the IJ did here. It's not that it needs to provide, you know, a page or three pages, but that's not the requirement. The requirement is not deeming it irrelevant, which is what the IJ did here. Okay, what if I disagree with you that the IJ in this case deemed the mental health evidence irrelevant? Because I don't agree with you that the IJ did that. In that case, Your Honor, I would also go to my second argument, which is that the IJ did not consider properly the definition and standard of what a particularly serious crime entails. As this Court's decision in Alfonso says, particularly serious crimes cannot make up a major proportion of crimes generally. There's two modifiers to that qualification, and if we follow the IJ's method, we'd result in a sweeping amount of crimes to qualify as particularly serious. And as this Court's decision in Delgado said, particularly serious crimes require intentional use of force or threat. They must pose a danger to the community involving violence not attributed to the petitioner's mental health. And such crimes include felony menacing with a deadly weapon, armed robbery, burglary of a dwelling with a deadly weapon. Okay, well, let's look at the facts of this case then, okay? So you have the first victim that the petitioner hit in the face with a closed fist. The petitioner says hit two to three times. The victim says ten times. There are two large bumps on the forehead, red marks near the left eye, redness on the left cheek. So the IJ determines at least a minimum of four times because there are four discrete injuries. So that gets to me the violence requirement that you just stated. Let's go to the second victim. She is afraid that he's going to steal her car and take the keys. Let's go to the third victim. The petitioner is holding a ball cap in his left hand, concealing his right hand and using his fingers to simulate a handgun. Okay, so that third victim is afraid that the petitioner has a handgun and that's the So he got a five-year sentence of carjacking conviction in 1997, a 12-year sentence in 2003. So based on the requirements that you just stated for a particularly serious crime, why aren't these facts not sufficient to meet that standard? Because as Your Honor, this court held in Delgado, there's no intentional use of force or threat here. Yes, Mr. Montes harmed one person and threatened to use force against another, but he was losing his mind and acting out of fear for his life. And nobody disputes that. Under your argument, counsel, does that mean that once you negate a lack of intent, then it can't be a particularly serious crime? Or are there circumstances under which the violence and dangerousness is such that you can still find a particularly serious crime? As in this case, the latter, Your Honor, which is why this court in Delgado set out what constitutes particularly serious crimes and noted some examples. This is not an armed robbery. This is not a burglary with a deadly weapon. Mr. Mr. Montes did not have a deadly weapon. He was just holding his hat in his in his hand. It's unfortunate that the victim thought that was a handgun, but he was literally he was losing his mind and nobody disputes that. That was a witness. A witness said he observed him simulating a handgun under the ball cap. Yeah, he was just he was just holding his he was just holding his hat in his hand. Your Honor, if I could, I'll go to my third argument regarding the denial of the Convention Against Torture claim here. Again, Your Honors, the IBN-BIA committed a legal error here by failing to consider the entire record. They were required to consider all evidence relevant to possibility of future torture here. Any kind of catch all phrase does not suffice. And any kind of failure to mention highly probative or potentially dispositive evidence under COLE is, you know, grounds for reversal. Here we have a bunch of evidence, Your Honors, very similar to what this court had seen in Guerra and Iglesias and Iglesias. We have evidence of hostile environment throughout Mexico against people with mental illness. We see physical and sexual abuse, forced labor, restraining, overuse of abusive therapies, human rights abuses and social stigma and discrimination all presented on pages 333 to 360 of the record. It is it was documented that people with mental illness throughout Mexico are subject to human rights abuses and that the Mexican government is made aware of these deplorable conditions, but is not doing anything to to act on it. Furthermore, Your Honors, the record also showed credible testimony from Mr. Montes that he suffers visual and auditory hallucinations. He experiences blackouts. He feels the need to tell people about the voices he's hearing. He's going to expose himself if he is deported to Mexico and he will be abused and restrained by the staff there, as presented in the country conditions reports. He has no family support there, which is going to add to his stress. And here, all the all the IJ and BIA did was look at past torture. The fact that Mr. Montes does not would deny experience any kind of past torture. And under this court's decision, Baraja Romero, what the petitioner is required to prove is more likely than not that he or she would be tortured if removed, not that he was tortured in the past. Yes, it's a factor to consider, but it's not dispositive. Furthermore, Your Honors, on pages 886, the IJ in the withholding of removal context based its decision on predictive findings. He said, Mr. Montes is taking medications. I can't discern any kind of unusual behavior. He's never committed any mental health. He's never been committed to a mental health institution outside of his criminal decision back saying you cannot base those kinds of decisions on predictive findings, especially where the controlled and stable environment that Mr. Montes was provided here, he's not going to be provided in Mexico. And that's on page 876 of the record. Yet the IJ used those exact predictive findings on page 10, 10, 12 and 10, 13 of the record to support a denial of relief under the Convention Against Torture. And if I may, Your Honors, just briefly, the same kinds of facts and evidence was shown in Guerra and Iglesias and Iglesias. For example, in Iglesias, the evidence was replete with official acknowledgment of widespread abuse, physical restraints, lack of medical care. And Mexican officials, again, acknowledged that patients suffer inhumane treatment. And that was enough, enough for this court to find that the petitioner was entitled to relief under the Convention Against Torture. And the similar evidence was also provided under Guerra. So the IJ's finding was erroneous and the BIA's affirmation of that was similarly so. So we ask that you reverse the BIA's decision and grant relief here. All right. Thank you, counsel. Thank you. Mr. Evans. You're on mute. I apologize. There's always something. Manning Evans for the government. Twice, a petitioner was convicted of carjacking in California. He was lawfully sentenced to a total of 17 years of incarceration. The record shows four individuals victimized by these crimes. Judge Coe has covered the facts regarding the 2003 conviction. I point out that for the 1997 conviction, where a petitioner received five years, two years of that sentence was based on an enhancement for using a knife. And that appears at 597 of the record. Petitioner was held criminally accountable for these acts, and the validity of the convictions are not at issue. The agency properly denied petitioner's applications for three basic reasons. First, it ruled his latest carjacking conviction was a particularly serious crime, barring his applications for both asylum and withholding. Second, the agency denied asylum in the exercise of discretion, emphasizing petitioner's criminal history. And third, the agency ruled petitioner failed to carry his burden on the CAT claim. Looking at the particularly serious crime determination, first, I'd emphasize that the court's jurisdiction here is narrow. Petitioner was found to be removable based on a conviction involved or a crime involving moral turpitude. So the bar at 8 U.S.C. 1252 A2C applies, as this court explained in the Pachankov matter. That's a 705 at 3rd 444. Petitioner is barred from seeking from this court a reweighing of the particular serious crime factors and can only raise constitutional or legal challenges. His main legal challenge... As I understand Ms. Bobby's argument is that the IJ misapplied the standard in Gomez-Sanchez and improperly weighed the import of his mental condition at the time. Can you address specifically that argument? Yes, Your Honor. Well, first, I would say that to the extent there's a claim of improper standard, the court would have jurisdiction to review that, but not reweighing. The issue, I think, there are two arguments that come across from the brief. One is that the IJ did not consider the petitioner's mental state at all. And the other is that she relied only on the mental state. So the briefs are not entirely clear on that point. In either case, I think the court's aware that the immigration judge provided three full single-spaced pages of analysis on this issue, including a discussion of the particularly serious of the mental state of petitioner. And I think it's important to recognize that the mental state of the petitioner, while it's relevant, the real question here is, is the conviction an accurate prediction of danger to the community? And the attorney general, in a matter of BZR, provided a nice example of how mental state and mental illness can be a factor in weighing these. The attorney general referred to footnote 10 in the Gomez-Sanchez decision, which talks about the victim of domestic violence suffering from post-traumatic stress disorder. And the attorney general recognized it would be appropriate to consider that in assessing the dangerousness of the victim of abuse if that person in turn assaulted their abuser. And you can see, I think, there that the mental condition in the particularly serious crime determination doesn't question the validity of the conviction, but it does say that that conviction is not a good indicator of how dangerous that person is to the community. Now, meanwhile, we have here a very good example of someone who poses a danger to the community, even when you do consider the mental state that he was in. And the immigration judge really, I think, looked at this from both perspectives. She looked at the person's conduct at the time of the crime and and said, I can't ignore the fact that this person committed these acts against, we know there were three victims that he acknowledged that he approached other people as well in the course of that crime spree. And conversely, the immigration judge also said, but if I'm going to consider the mental state of the petitioner here, with respect to whether or not he's a danger to the community, I still find that the other Francesco factors outweigh that consideration. That is a fulsome analysis by the immigration judge. And we believe that it's a reasonable one should be upheld by the court. With respect to the question about whether or not the immigration judge found a particularly serious crime based simply on mental state, I would suggest that that petitioner may be misreading a statement. The immigration judge referred to the petitioner committing these crimes as as he suffered from severe hallucinations, the respondent committed acts that must be considered particularly serious. This is a page. So on that sentence, though, I mean, can that sentence be read that he's the IJ saying that because he suffered from hallucinations, that the crime must be considered particularly serious? And that would seem to be an improper use of the hallucinations to aggravate the claim. I guess my point is that while Gomez-Sanchez doesn't say that it's always mitigating, can it be aggravating? I mean, is that a proper weighing of the hallucinations in this case? Well, I don't I don't think the immigration judge is saying that it aggravates your honor. I simply think that she is taking into account that he was under these delusions at the time of the crime. The petitioner has read the immigration judge as saying because, but she didn't. She used the word as, which I think is a more temporal use of the word. In other words, he was. How would you interpret this sentence? I think the immigration judge was saying, yes, he was under delusions at the time he committed these acts. Let's look at the acts. It was she was not saying he was delusional, therefore it's a particularly serious crime. I think she was focusing on on the acts. And we addressed this in footnote four of our brief further. I just found that sentence. I mean, I don't think it's appropriate to say because he had solutions, I must make a PSG, particularly serious crime PSG. If that's what the IJ had done, your honor, I would agree. But but I don't believe that's what the sentence is. And I think when you read it in context, this this IJ did a thorough job. And I, I think it would be well, I think the reasonable reading of what she did here is that she took into account first what actually happened when these crimes were committed. And then she looked at the person's mental state and and said, I'm sorry, it doesn't detract from what happened here. As far as predicting the dangerousness of this person based on the convictions. Before you run out of time, can you address the CAC claim? Because we have cases like Penaloza and Iglesias where on very similar records, we've sent it back. Here, your honor. I think that the the clearest way to seeing the adequacy of the agency's decision is to the petitioner has to prove a specific intent to inflict severe harm and the there's no evidence in the record to compel that anyone has that intent with respect to this petition. But are you asserting that sexual abuse of patients is committed out of ignorance or negligence? How could sexual abuse not satisfy the specific intent requirement? Your honor, if there was some indication that this petitioner, that someone had that intent of sexually abusing this petitioner, then then I think we'd have something to argue about here. But there is just there's nothing in the record to say that anybody has that intent towards this petitioner. We've mentioned that the emphasize that the Viegas decision supports the agency's decision in this case in three respects. But that's not a requirement in the law, is it? That the only way someone could be eligible for cat relief is that they have to point to a specific mental health facility worker and say that person has a specific intent to harm this named petitioner. That's not a requirement of the law, is it? Your honor, specific intent discussed in Viegas says that someone has to have that intent. And it's not just an intent to I mean, I suppose if you intend if you could actually show specific intent on the part of the entire mental health system towards every mental health patient, that might be a way to prove the claim. But that's not what. OK, but you can see there's evidence in the record that patients are subject to sexual abuse in Mexican mental health facilities. Your honor, there is no question that no question that there is evidence of historical gross negligence and misunderstanding of the nature of psychiatric illness in Mexico. That's what this court said in Viegas. And yet it still said there's no evidence of specific intent here and you have to have that. And let me point out that it is a distinct requirement from showing acquiescence. It is it is two different things. You have to show that somebody has this intent and then that some government actor is acquiescing in this conduct. But but there's no specific intent here. We point out. OK, let's look at the evidence in Viegas that the court found, OK, we're going to attribute it to historical gross negligence and misunderstanding of the nature of psychiatric illness. That was living in terrible squalor. That was. That they're lumped mentally ill and mentally retarded or lumped together, sometimes chained, ill-clothed, abused, otherwise dehumanized. There was no toilet paper. Often men walk through when there's feces and urine on the floor, the tap water runs sporadically, there's no soap, there's no towels, the smell is unbearable. Where does it say that sexual abuse is the result of historical gross negligence and misunderstanding of the nature of psychiatric illness? I don't I don't believe it says that I don't think it would say that, Your Honor, but I can only say that that there's nothing in the record to say that this petitioner is. Yes, Your Honor. So, Viegas was 2008 and Iglesias Iglesias was 2022 and in between we have all of these human rights reports and documented situations and sexual abuse of patients and and time has passed, meaning that to the extent it might have been a misunderstanding about the nature of and I know where you're getting that. That's a quote from a footnote in Iglesias Iglesias. But to the extent that in 2008, the squalid conditions were there because of a misunderstanding and confusion about mental retardedness or mental illness or treatment. By 2022, things have changed and we have all these intervening reports and evidence that document sexual abuse, which is intentional. Well, Your Honor, I think that there could be enough evidence in this case or a similar case where the original fact finder could draw an inference saying that the petitioner or the applicant had met their burden. But that is not the question before this court. The question here is whether or not there is evidence in the record that compels that evidence of anyone having any intention towards this petition. And because of that, how would you distinguish this case from this Iglesias? Well, let's see. In Iglesias, I believe that there was a question about I recognize you're on the panel there, Judge. But if I recall, there was a problem about the standard of review. And I think the board was taken to task for applying the incorrect standard of review on an appeal that the immigration judge actually may have found torture in that case. In any event, the panel then proceeded on its own, I believe contrary to the teachings of Ventura and Thomas, to make its own conclusions instead of sending it back to the agency. It's not for this court to do that, Your Honor. And so I suggest that the court went too far in that case. But if we're troubled by the same facts, though, then are you suggesting we would remand and ask the BIA to look more carefully at the evidence in the record? No, I would not suggest that in this case, Your Honor. This case has been thoroughly vetted by the agency with multiple remands. And I think a thorough examination of the facts by the immigration judge. If I could address one other, well, two other points. Can I follow up, Mr. Evans, with that question? Is there any indication in the record that the IJ properly considered the likelihood that the petitioner will be subjected to sexual abuse? No, I don't believe so, Your Honor. I believe that she simply considered a specific intent to inflict serious harm. And isn't that alone enough to warrant a remand? No, Your Honor, because there needs to be some clear presentation of specific evidence and argument before the agency that that is the specific ground of the claim. And instead, we have, I think, a shotgun approach in trying to present every possible horror in the Mexican mental health system before the agency in hoping that something sticks. And so I think that this petitioner has had ample opportunity to be heard and has not shown a specific intent to inflict serious harm. If we were to remand for the agency to address the question that Judge Nguyen raised, whether Mr. Montes Alfaro would more likely than not be subject to sexual abuse in a mental health facility in Mexico, should we then also remand on the other conditions such as the use of physical and chemical restraints so that there can be a holistic determination about the conditions which may or may not constitute the likelihood of torture for Mr. Montes Alfaro? Your Honor, the government's position generally is that when the court remands, it should just remand, period. So I would not, I would not agree to any kind of limitation on a remand. I think the agency should be able to do what it wants in the cases before it. I see I'm over my time. There were two other points I wanted to address. Go ahead. You can raise them, but go ahead. The first is, I point out that in Viegas, the immigration judge expressed some question about whether or not the petitioner there would have been brought into the Mexican mental health system, but didn't make a determination. And I would suggest that that situation is equivalent to what we have here, where the board rejected the immigration judge's finding of possible persecution in sending the withholding claim back. That issue was never revisited by the immigration judge. She instead focused on the specific intent question. So I think that that's similar, just as Viegas also said, there's no specific intent. Also, with regard to denying asylum and the exercise of discretion, we would say that the board engaged with the issue to the extent that it was presented. I think it appears it's one paragraph in the brief to the board, arguing that the immigration judge had abused their discretion. The board properly responded to that argument, and that should be sufficient. If there's nothing further, we'd ask that the court deny the petition for review. All right. Thank you, counsel. Thank you, Your Honor. Ms. Baggi, I'll give you two minutes. Thank you, Your Honor. Very quickly, I think the standard that Mr. Evans is setting for a specific intent in a convention against torture claim is quite stringent, more so than that is required by this court or any kind of regulation. And in fact, as Your Honors noted, in several cases, including Rador, Iglesias, and Guerra, we have the same exact facts. In Rador, for example, there was evidence presented of torture in Mexican prisons, but this court noted that the IJ didn't simply, in finding relief under CAT, the IJ did not simply infer from a finding that torture occurs generally in Mexico, but rather took the circumstances, namely his diagnosis of schizophrenic and seizure disorder, that would make him likely to attract the attention of the police. That's exactly what we have here, but that's not the kind of analysis or view of the evidence. That's not what the IJ did here in terms of a proper analysis. In Iglesias, again, in terms of specific intent, that's on page six and seven of the record presented evidence of everything I've said before, you know, abuse, human rights violations, employees are making fun of the of the patients. And in that case, the court also held that the record compels the conclusion that officials in those psychiatric hospitals commit serious rights abuses. And it's not out of ignorance or negligence, it's with a specific intent to harm patients. And we have the same kind of stuff in Guerra. The standard that Mr. Evans is setting requires specific intent from each person in every hospital. And as we've seen in Rador and Guerra, that's not what's required. He has abnormal behavior and he is likely to expose himself. And that under those facts, this case, this court has found, you know, that relief is warranted. And that's what is required here as well. Thank you. Thank you, counsel. Montes versus Garland will be submitted and this session of the court is adjourned for today.
judges: WARDLAW, NGUYEN, KOH